**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re: PAUL A. STEADMAN,

             Chapter 15
             Case No.  09-28427  (RTL)

    Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

Neuner and Ventura LLP
Steven R. Neuner, Esq.
Attorneys for Peter A. Langard, Foreign Representative

Archer & Greiner, P.C.
Stephen M. Packman, Esq.
Attorneys for Paul Anthony Steadman, Debtor

**RAYMOND T. LYONS, U.S.B.J.**

**INTRODUCTION**

   The issue is whether chapter 15 of the Bankruptcy Code applies to a foreign national who has a Permanent Resident Card (Green Card) with an expiration date that may be removed. Congress chose to exclude certain individuals from chapter 15 because of local concerns for domestic relations, priority claims, exemptions and the like. *See* 11 U.S.C. § 1501(c)(2) (2008). This Debtor who has: (1) been granted conditional permanent residency due to his marriage to a United States Citizen; and (2) applied together with his spouse to remove the expiration date from his Green Card, meets the statutory exception from chapter 15 as an "alien[] lawfully

admitted for permanent residence in the United States." *Id.*

## JURISDICTION

This court has jurisdiction of this case under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all cases under Title 11 of the United States Code to the bankruptcy court. Bankruptcy judges may hear and determine all cases under Title 11 pursuant to 28 U.S.C. § 157(b)(1).

## FINDINGS OF FACT

The purported debtor ("Debtor") is a citizen of the United Kingdom of Great Britain and Northern Ireland ("U.K.") and holds a passport issued by that country. The Debtor was a beneficiary of the probate estate of his deceased father from which he received a substantial sum of money. He then made a series of transfers of the money received from his father's estate to a woman in the United States. The largest transfer was made on April 11, 2007. Two days later, the American woman used the money to purchase a residence in New Jersey. The grantees on the deed are the Debtor and the woman jointly, as husband and wife; although the Debtor testified that, to his understanding, the title was meant to be solely in the woman's name. The residence was acquired with a purchase money mortgage in the amount of $170,000. The woman signed the Debtor's name on the mortgage with his authorization pursuant to a written power of attorney signed by the Debtor while in the U.K. The Debtor also testified that, to his understanding, he is not obligated on the mortgage debt. Two months later, on June 12, 2007, the Debtor and the American woman were married in New Jersey. The Debtor then applied for, and was granted, permanent resident status effective October 29, 2007. He was issued a Permanent Resident Card (Green Card) by the United States Department of Homeland Security.

The card has an expiration date of October 29, 2009.  The Debtor and his spouse recently applied for a change in his status to remove the expiration date on his Permanent Resident Card.  He has been granted a one-year extension of the expiration date while his application is pending.  The Debtor has also obtained a Social Security card and a driver's license issued by the State of New Jersey.  He and his spouse are expecting their first child.

After relocating to the United States in 2007, the Debtor was unemployed for several months and financially dependant on his wife.  Since May of 2008, the Debtor has been employed in various salaried positions.  While unemployed, he did attempt to start an import business and attended a trade fair in New York.  He also made some sales of goods that had been purchased in the U.K.

The Debtor filed a Statement of Affairs (Debtor's petition) under the Insolvency Act of 1986 with the Kidderminster County Court in the U.K.  The petition was dated January 25, 2008 and a Bankruptcy Order was entered on January 30, 2008.  The petition contains several inaccuracies and omissions.  As his home address, the Debtor listed his former residence in the U.K., when in fact he was residing in New Jersey.  As his marital status, the Debtor indicated "single", when in fact he was married to the American woman at that time.  In the Debtor's list of assets he disclosed real property in the U.K. that he was about to surrender to the mortgage holder, yet failed to disclose his interest in the New Jersey residence.  Under "Secured Creditors" the Debtor listed the mortgagee on the U.K. real estate, but not the mortgagee on the New Jersey residence.  In response to the question regarding property disposed of in the previous five years (such as gifts), the Debtor failed to disclose the transfers of funds to the woman in the United States who became his wife.  He also failed to identify his wife as a member of his household.

The Official Receiver's Report estimates that as of the date of his bankruptcy, the Debtor

had approximately £62,000 of liabilities. After the real property in the U.K. was sold by the mortgagee, the deficiency on the second mortgage increased the estimated liabilities to approximately £87,000.

The Debtor testified in this court that he had no debts in the U.K. that have not been listed in the Receiver's Report. In the United States he has co-signed for a $5,000 auto loan with his wife. He denies any personal liability on the mortgage loan on his residence and states that he has no other creditors in the United States or elsewhere, other than those summarized in the U.K. Receiver's Report.

The U.K. Receiver discovered the inheritance and the transfers made to the Debtor's American wife. A trustee was appointed in the U.K., who is the petitioner here, and the Debtor's discharge has been suspended in the U.K. The U.K. Trustee ("Trustee") has conceded that the Debtor has a Permanent Resident Card with an expiration date of October 29, 2009 that has been extended for one year. The Trustee has also conceded that there is no evidence to suggest that the Debtor has debts in excess of the limits specified in 11 U.S.C. § 109(e).

## DISCUSSION

In determining whether a foreign trustee's Petition for Recognition of a Foreign Representative should be granted pursuant to 11 U.S.C. § 1515, the court must first consider whether chapter 15 of the Bankruptcy Code applies to this Debtor. Section 1501(c)(2) of the Bankruptcy Code provides, in part: "[t]his chapter does not apply to . . . (2) an individual . . . who [has] debts within the limits specified in section 109(e) and who [is a] citizen[] of the United States or alien[] lawfully admitted for permanent residence in the United States." 11 U.S.C. § 1501(c)(2) .  Section 109(e) establishes the debt limits for a chapter 13 debtor.

With respect to recognition proceedings under Section 1516 of the Bankruptcy Code,

"the ultimate burden as to each element is on the foreign representative." H.R. REP. NO. 109-31, pt. 1, at 112-13 (2005); *see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007)*; In re SPhinX, Ltd.,* 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006). However, because Section 1501(c)(2) is an exception to the rule, the burden of proof shall be on the Debtor to establish that chapter 15 is not applicable to him because he meets the criteria set forth in Section 1501(c)(2).

As to the first prong of the exception, the Debtor testified to the existence of debts well below the amounts provided for in Section 109(e). Section 109(e) allows for "noncontingent, liquidated, unsecured debts of less than $336,900 and noncontingent, liquidated secured debts of less than $1,010,650." 11 U.S.C. § 109(e) (2008) (amounts adjusted periodically for inflation). The U.K. Receiver's Report estimates the Debtor's unsecured liabilities currently stand at £87,000 ($140,845)[1], including the deficiency on the second mortgage of the Debtor's real property located in the U.K. The Debtor testified that he has no other unsecured debts. The secured debts in the U.K. were approximately £200,000 ($323,782). Adding in the Debtor's mortgage of approximately $165,000 on the New Jersey residence and the $5,000 car loan, the Debtor's liabilities are well below the limits set forth in Section 109(e). *See* 11 U.S.C. § 109(e). The U.K. Trustee concedes that there is no evidence to contradict the Debtor's estimation of his debts; therefore, the Debtor has succeeded in establishing that his debts fall below the limits set forth in Section 109(e), as required by the Section 1501(c)(2) exception.

There is, however, a significant dispute as to whether the Debtor is an "alien[] lawfully

---

[1] The British Pound to U.S. Dollar conversions are approximations based on the posted exchange rate of 1.618891 U.S. Dollars per British Pound on August 26, 2009 at approximately 10:00 AM eastern time, found on http://moneycentral.msn.com. It should be noted that at the evidentiary hearing, counsel for Trustee estimated the exchange rate to be approximately $1.7 per £1.

admitted for permanent residence in the United States," the second prong of the 1501(c)(2) exception.  The Debtor urges the Court to find that he is an "alien[] lawfully admitted for permanent residence in the United States" because he has been granted a Permanent Resident Card (Green Card) by the Department of Homeland Security that has been renewed for an additional one year while his application to remove any expiration date is under review.  The Debtor is married to a United States citizen with whom he owns a home in New Jersey and has lived in the New Jersey home since 2007.  The Debtor and his wife are expecting a child.  He is employed in the United States and expresses his intent and desire to remain in this country.

The Trustee disputes the Debtor's status as "permanent," arguing that it is more accurately characterized as "conditional."  The Trustee cites the Immigration and Nationality Act ("INA"), 8 U.S.C. 1101 (2009), as the source of the terms used in section 1501(c)(2).  As defined in the INA, "lawfully admitted for permanent residence" means "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  8 U.S.C. 1101 (a)(20) (2009).  The INA defines "permanent" as "a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with the law."  8 U.S.C. 1101(a)(31) (2009).  These statutory definitions suggest that "permanent" may be subject to change.

The Ninth Circuit described the process to become a permanent resident through marriage.  *Choin v. Mukasey*, 537 F.3d 1116, 1118-19 (9th Cir. 2008).  *Choin* explains:

> To become a lawful permanent resident, the fiancée of a U.S. citizen
> must go through four steps.

6

> First, the non-citizen must obtain a K visa through a visa petition filed by her U.S. citizen fiancé. 8 U.S.C. § 1184(d). . . .
>
> The second step towards permanent residency is marriage to the U.S. citizen. . . .
>
> If the couple is married within ninety days, the non-citizen spouse can take the third step and apply to adjust her status to that of a lawful permanent resident. 8 C.F.R. § 245.2(c). Before 1986, this application for adjustment of status was automatic. *See Matter of Dixon,* 16 I. & N. Dec. 355, 357 (BIA 1977). In 1986, however, in response to certain marriage fraud concerns, Congress enacted the Immigration Marriage Fraud Amendments ("IMFA"). Pub.L. No. 99-639. The IMFA deleted the language that made adjustment of status for K visaholders automatic, and therefore required K visaholders, like other nonimmigrants, to adjust their status through the Immigration and Nationality Act ("INA") § 245. *See* 8 U.S.C. § 1255. . . .
>
> The IMFA also added a new fourth step to the process. Now, K visaholders can first adjust only to *conditional* permanent resident status. 8 U.S.C. § 1255(d). Section 216 of the INA now provides that, for the first two years of permanent resident status, spouses of U.S. citizens are only conditional permanent residents. Upon the two-year anniversary of gaining conditional permanent resident status, the couple can jointly petition to have the non-citizen's conditional tag removed. 8 U.S.C. § 1186a(c)(1)(A). In the joint petition, the couple must affirm that they are still married and that they did not enter into marriage for immigration purposes. 8 U.S.C. § 1186a(d)(1). They must also provide information about their place of residence and their employment history over the previous two years. *Id.*

*Id.*

In the present matter, the Debtor has completed three steps in the process and has petitioned to have the conditional tag removed, as required by step four. Thus, at the time the chapter 15 petition was filed, the Debtor was a conditional permanent resident. Does this mean he is an "alien[] lawfully admitted for permanent residence in the United States," within the meaning of Section 1501(c)(2)? The statutory definition of "permanent" in the INA that

7

contemplates the possibility of a change in status, suggests that a conditional permanent resident is, nonetheless, permanent. *See* 8 U.S.C. 1101(a)(31).

A review of the legislative history of chapter 15 helps to determine the intent of the drafters with respect to the 1501(c)(2) exception. Chapter 15 was added to the Bankruptcy Code with the goal of promoting international comity and "to provide for the fair and efficient administration of cross-border insolvencies, which protects the interests of creditors and other interested parties, including the debtor." H.R. REP. NO. 109-31 at 105. The text of the statute is based primarily on the preamble and Article 1 of the Model Law on Cross-Border Insolvency ("Model Law") promulgated by the United Nations Commission on International Trade Law at its Thirtieth Session on May 12-30, 1997. *Id.* at 106*; see also* G.A. Res. 52/158, U.N. Doc. A/RES/52/158 (Jan. 30, 1998). Chapter 15 added to the Model Law the ordinary consumer exception at issue in this case, which is not specifically contained in the Model Law, but for which the drafters recognized the potential need "in countries like the United States where there are special provisions for consumer debtors in the insolvency laws." H.R. REP. NO. 109-31 at 106. The U.N. Guide to Enactment of the Model Law provides:

> In those jurisdictions that have not made provision for the insolvency of consumers, or whose insolvency law provides special treatment for the insolvency of non-traders, the enacting State might wish to exclude from the scope of application of the Model Law those insolvencies that relate to natural persons residing in the enacting State whose debts have been incurred predominately for personal or household purposes, rather than for commercial or business purposes, or those insolvencies that relate to non-traders. The enacting State might also wish to provide that such exclusion would not apply in cases where the total debts exceed a certain monetary ceiling.

U.N. Tdbor Comm'n On Int'l Trade Law, 30th Sess., Art. 2(D), at 67-73, U.N. Doc. A/CN.9/442 (1997).

8

Congress sought to prevent abuse of this consumer exception by conditioning the exception on the citizenship/long term residency requirement and the debt limitations:

> The reference to section 109(e) essentially defines "consumer debtors" for purposes of the exclusion by incorporating the debt limitations of that section, but not its requirement of regular income. The exclusion adds a requirement that the debtor or debtor couple be citizens or long-term legal residents of the United States. This ensures that residents of other countries will not be able to manipulate this exclusion to avoid recognition of foreign proceedings in their home countries or elsewhere.

H.R. REP. NO. 109-31 at 106.

Additional insight is ascertained from Professor Jay Lawrence Westbrook in his article, *Chapter 15 at Last,* 9 AM. BANKR. L.J. 713 (2005). Professor Westbrook was instrumental in the drafting of chapter 15. *Id.* at 719 n.41. He explains that during the creation of the Model Law, the United States delegation deemed the exclusion of consumer cases a necessity, "because its application to natural persons would invoke all of the policy conundrums of domestic relations law, exemption law, and other areas that could be avoided in a purely corporate setting." *Id.* at 725. Although this type of exclusion was contested by other delegates, the committee settled on making the exception an option available only to countries "if their domestic laws had traditionally given different treatment to consumers." *Id.*

Taking into consideration the legislative history, the Model Law and its stated intent, and the policy considerations raised by Professor Westbrook, this court concludes that the Debtor is within the class of persons intended by Congress to be excepted from chapter 15 by Section 1501(c)(2). The Debtor has a family, a job, and

owns a home in the United States. He has made clear his intent to remain in the country and not to return to the U.K. or carry on business in the U.K. He is a permanent resident within the meaning of Section 1501(c)(2), therefore, chapter 15 does not apply to him.

It is important to acknowledge the concerns of those who were opposed to the consumer exclusion in the Model Law; specifically, the concern that debtors may flee to the United States to avoid their debts, making our country a haven for fraudsters. *See Id.* at 725 n.79. Section 1501(c)(2) seeks to avoid this outcome with the inclusion of the citizenship/long-term resident requirement. H.R. REP. NO. 109-31 at 106. Although this court does not condone the Debtor's behavior, it is constrained to consider equity only "within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 108 S.Ct. 963, 969 (1988). As the court stated in *In re Loy,* 380 B.R. 154 (Bankr. E.D. Va. 2007), regarding a petition for recognition under chapter 15, "Congress did not include language in §§ 1509, 1515, or 1517 which suggests that a court is permitted to include equitable considerations in its determination of whether the prerequisites for foreign proceeding recognition have been met." *Id.* at 168. These cases where chapter 15 does not apply, "remain subject to the domestic rules and general notions of comity and cooperation extant prior to § 304." Jay Lawrence Westbrook, *Chapter 15 at Last*, 79 AM. BANKR. L.J. 713, 725 (2005). The Trustee's counsel indicates that he is taking advice as to what other remedies may be available to him, for example filing an involuntary petition under 11 U.S.C. § 303(b)(4).

## CONCLUSION

Chapter 15 of the Bankruptcy Code does not apply to individuals whose "debts [are] within the limits specified in section 109(e) and who are . . . aliens lawfully admitted for permanent residence in the United States." 11 U.S.C. § 1501(c)(2). This Debtor, whose debts fall well within the 109(e) limits, is a foreign national married to a United States citizen, a New Jersey homeowner, and the holder of a Permanent Resident Card with an expiration date that may be removed in the near future. While the Debtor's residency status may be conditional, Congress felt it was necessary to exclude certain individuals from chapter 15 because of local concerns for domestic relations, priority claims, exemptions, etc. This court finds that a resident alien in the Debtor's circumstances is among those intended by Congress to be characterized as "lawfully admitted for permanent residence in the United States" and as such, excluded from the ambit of chapter 15.

Dated: September 3, 2009            **/S/Raymond T. Lyons**
                                    United States Bankruptcy Judge